UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FSC INTERACTIVE, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-4450** |
| **ROGERS COLLECTIVE, INC.** | **SECTION: "P" (5)** |

**ORDER AND REASONS**

Before the Court is the Motion for Partial Summary Judgment[1] of Defendant, Rogers Collective, Inc. (doing business as Hello Seven) ("H7").[2] For the reasons that follow, **IT IS ORDERED** that the motion is **GRANTED IN PART** and **DENIED IN PART**.

**I.   BACKGROUND**

Plaintiff, FSC Interactive, LLC ("FSC"), is an advertising agency and defendant, H7, provides business, marketing, financial, and legal training to women and people from historically marginalized groups.[3] In early 2022, H7 engaged FSC to help "boost Hello Seven's digital and social media presence."[4] The parties signed a contract pursuant to FSC's recommendation that H7 spend $501,500 over the span of 11 months, consisting of: (1) an initial set-up fee of $5,500; (2) a monthly retainer to FSC of $6,000; and (3) a monthly ad budget for LinkedIn, YouTube, and Google of $40,000.[5]

The contract between FSC and Hello Seven provided that FSC would bill direct ad spending (*i.e.*, payments made to LinkedIn, YouTube, Google, and other online advertisement platforms) on H7's credit card directly.[6] But, according to FSC, a subsequent oral agreement in

---

[1] R. Doc. 79.
[2] After issuing an oral ruling following its September 25, 2024 hearing, the Court advised it would issue written reasons at a later date and does so at this time.
[3] R. Doc. 79-3.
[4] *See id.* at 1-2.
[5] *See* R. Doc. 29-1 at 17.
[6] *Id.* ("All media will be charged to client credit card according to each channel's terms of billing.").

March 2022, before any ads were run, altered the terms of the agreement so that ad spending would be initially charged to FSC's credit card and later invoiced to Hello Seven.[7]

On May 16, 2022, H7's Chief Operating Officer ("COO") asked FSC to develop and launch additional ads for a webinar that H7 was hosting in three days.[8] Then, on May 25, 2022, H7 exercised its right under the contract to cancel the contract, without cause, by providing 30-day notice.[9] H7 refused to pay any outstanding charges for FSC's professional services or ad fees.

FSC brought this action against H7 on November 8, 2022, asserting seven claims: (1) breach of contract, (2) breach of good faith and fair dealing, (3) open account, (4) unjust enrichment, (5) detrimental reliance, (6) fraud, and (7) violation of the Louisiana Unfair Trade Practices Act ("LUTPA").[10] On February 16, 2023, Judge Zainey, who previously presided over this action, granted in part and denied in part H7's motion to dismiss FSC's fraud and LUTPA claims.[11] Judge Zainey dismissed without prejudice FSC's claim for treble damages under the LUTPA,[12] which FSC revived in its amended complaint (and which is now before this Court on H7's partial motion for summary judgment).[13]

Now, H7 brings a motion for partial summary judgment seeking dismissal of FSC's fraud, LUTPA, and Open Account claims.[14]

## II. LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

---

[7] R. Doc. 110-1 at 44-45 (FSC 30(b)(6) Tr. 173-76); *see also* R. Doc. 81-2 at ¶ 6.
[8] R. Doc. 22-9 at 4.
[9] R. Doc. 79-3 at 3; *see also* R. Doc. 29-1 at 17 ("With a 30 day notice, client or agency may terminate this agreement with no further obligation.").
[10] R. Doc. 1.
[11] R. Doc. 19.
[12] *Id.*
[13] R. Doc. 29.
[14] R. Doc. 79.

2

any material fact and that the moving party is entitled to a judgment as a matter of law."[15] "[C]ourts may not 'evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes.'"[16] "The sole question is whether a 'reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor.'"[17]

## III. LAW AND ANALYSIS

### A. FSC's fraud claim

A plaintiff bringing a claim for fraud under Louisiana law must prove the following elements: (1) misstatement or omission (2) of a material fact (3) made with the intent to defraud (4) on which the plaintiff relied and (5) which proximately caused the plaintiff's injury.[18] Under Louisiana law, "[f]raud cannot be predicated on unfulfilled promises or statements as to future events."[19] There is a heightened pleading standard for fraud claims: the plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."[20]

FSC has not identified any direct evidence indicating H7 held a "contemporaneous intent" to defraud FSC.[21] FSC's indirect evidence of fraudulent intent is also unavailing. FSC argues that H7 never intended to pay for FSC's services because H7's COO testified that the company based its marketing budget off of spending from the previous year, which FSC asserts could not have covered all of the spending commitments H7 made in 2022.[22] However, this argument is belied

---

[15] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[16] *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021) (quoting *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991)).
[17] *Id.* (quoting *Int'l Shortstop, Inc.*, 939 F.2d at 1263).
[18] *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997).
[19] *Johnson v. Unopened Succession of Alfred Covington, Jr.*, 42,488 (La. App. 2 Cir. 10/31/07), 969 So. 2d 733, 742.
[20] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008); *see also Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 551-52 (5th Cir. 2010).
[21] *See* R. Doc. 110-1 at 37 (FSC 30(b)(6) Tr. 142-44).
[22] R. Doc. 110 at 3 n.15 (citing R. Doc. 81-4 at 23 (H7 30(b)(6) Tr. 88)).

by H7's COO's subsequent testimony, describing that framing of its strategy as "backwards."[23] Instead, H7 employed a "test and invest" method of determining marketing spending that allowed for increased spending if marketing programs performed well.[24] Likewise, FSC's arguments premised on H7's internal "Project Vision Caster" reports fail to create a plausible inference of fraudulent intent.[25]

FSC argues that because H7 employees were responsible for monitoring its financials, including its Chief Financial Officer, who supposedly reviewed its credit card transactions daily, H7 must have realized at some point in March or April of 2022 that FSC was paying for ad buys with its own credit card.[26] Therefore, as this argument goes, H7's justification for cancelling the contract in May 2022—that FSC breached the contract by paying for ad spend on its own credit card—must have been pretextual, especially in light of the fact that FSC was spending far below the $40,000 per month budget outlined in FSC's proposal.[27] Thus, FSC argues, H7 committed fraud by continuing to request ad buys while simultaneously intending to bilk FSC.[28] This argument relies almost entirely on conjecture and fails to create any inference of fraud, and, therefore, does not meet the applicable legal standard for fraud under Louisiana law.[29] Accordingly, H7's motion is granted as to FSC's fraud claim.[30]

---

[23] R. Doc. 81-4 at 23 (H7 30(b)(6) Tr. 89).
[24] *Id.* at 23-24 (H7 30(b)(6) Tr. 88-90).
[25] *See* R. Doc. 110 at 4-5.
[26] *Id.* at 2-5.
[27] *Id.*
[28] *Id.*
[29] *See* R. Doc. 81 at 13-14 (asserting without competent evidence that H7 acted fraudulently).
[30] FSC's supplemental memorandum opposing summary judgment rehashes similar arguments based on H7's internal marketing budgets and are likewise unavailing. *See* R. Doc. 110 at 2-5.

### B. FSC's Louisiana Unfair Trade Practices Act Claim

The LUTPA prohibits ""[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."[31] The Supreme Court of Louisiana "has consistently held that in establishing a LUTPA claim, a plaintiff must show that "the alleged conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious."[32] Treble damages are available under Section 1409(A) of the LUTPA "[i]f the court finds the unfair or deceptive method, act, or practice was knowingly used, after being put on notice by the attorney general, the court shall award three times the actual damages sustained."[33]

FSC's LUTPA claim is essentially a restatement of its doomed fraud claim, with the exception of the evidence FSC submits related to H7's alleged continuing violation after H7 reportedly received a letter from the Louisiana Attorney General warning it of a potential LUTPA violation.[34] FSC's purported evidence of a continuing violation consists of (1) screenshots of a Google Drive platform purportedly showing that H7 had accessed certain folders therein after receiving the Attorney General's letter, and (2) the president of FSC's speculative testimony that H7 was sharing "strategies and all of our feedback around all of the work that we were doing for them" with subsequent advertising consultants.[35] This is not sufficient to support an LUTPA claim.

Like FSC's fraud claim, FSC's purported LUTPA claim more closely resembles a breach of contract claim.[36] FSC's assertion that its evidence shows "fraud, misrepresentation, deception,

---

[31] La. R.S. §51:1401; La. R.S. § 51:1405.
[32] *Quality Env't Processes, Inc. v. I.P. Petroleum Co., Inc.*, 2013-1582 (La. 5/7/14), 144 So. 3d 1011, 1025.
[33] *See also Miller v. Conagra, Inc.*, 2008-0021 (La. 2008), 991 So. 2d 445 (defining "continuing violation" for purposes of the LUTPA).
[34] *See* R. Doc. 81-2 at 19-23.
[35] R. Doc. 109 at 15-16.
[36] *See Nola Fine Art, Inc. v. Ducks Unlimited, Inc.*, 88 F. Supp. 3d 602, 613 (E.D. La. 2015).

or other unethical conduct" is not enough to avoid the same outcome.[37]  Accordingly, H7's motion for summary judgment is granted on this claim.

### C. FSC's Open Account claim

Under Louisiana law, an "open account" is "any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions."[38]  A successful claimant for failure to pay an open account can recover attorney's fees.[39]  When distinguishing between an open account and a standard contract, Louisiana courts consider: (1) whether there were other business transactions between the parties; (2) whether one party extended a line of credit to the other; (3) whether there are running or current dealings; and (4) whether there are expectations of other dealings.[40]  However, the Louisiana Supreme Court has said that there is no requirement of multiple transactions between the parties or that the parties anticipate future transactions for a business relationship to constitute an open account.[41]  Ultimately, the question is whether the contract leaves undetermined key aspects of the agreement, like the time period during which services will be rendered or the total cost of services expected.[42]

FSC's budget proposal, upon which the contract at issue is based, lists a few categories of fees: (1) a $5,500 account launch fee; (2) a service fee of $4,000 per month to run online paid advertising; (3) a budget of $40,000 per month related to online paid advertising; and (4) $12,000

---

[37] *See* R. Doc. 81 at 10; *see also Nola Fine Art*, 88 F. Supp. 3d at 613  (dismissing LUTPA premised on evidence duplicative of failed fraud claim).  Because summary judgment is appropriate on other grounds, it is not necessary to address the parties' arguments about LUTPA standing.
[38] La. R.S. § 9:2781(D).
[39] La. R.S. § 9:2781(A).
[40] *24/7 Restoration Specialists, LLC v. Young*, 634 F. Supp. 3d 287, 290 (E.D. La. 2022) (quoting *Cambridge Toxicology Grp., Inc. v. Exnicios*, 495 F.3d 169, 174 (5th Cir. 2007)).
[41] *Frey Plumbing Co., Inc. v. Foster*, 2007-1091 (La. 2/26/08), 996 So. 2d 969, 972.
[42] *Cong. Square Ltd. P'ship v. Polk*, No. 10-317, 2011 WL 837144, at *5 (E.D. La. Mar. 4, 2011).

for six months of search engine optimization.[43]  The contract itself also provides that "remaining services fees" are "billed to client on a monthly basis with the terms of payment NET 30 until services agreement is paid in-full."[44]  The contract does not contain an integration clause.

FSC's president and corporate representative testified that, after a March 16, 2022 phone call and other contemporaneous communications with H7, the parties understood that FSC would place future ad spending on its own credit card.[45]  When all inferences are drawn in FSC's favor, as they must be at this stage, there is sufficient evidence to create a genuine issue of material fact as to whether the parties' contract, regardless of its original nature, was transformed into an open account by subsequent oral agreement.  Accordingly, H7's motion for summary judgment is denied as to FSC's open account claim.

## IV.   CONCLUSION

For the foregoing reasons, H7's motion is **GRANTED IN PART** and **DENIED IN PART**.

Accordingly, **IT IS ORDERED** that FSC's fraud and LUTPA claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 12th day of March 2025.



                        **DARREL JAMES PAPILLION**
                    **UNITED STATES DISTRICT JUDGE**

---

[43] R. Doc. 81-2 at 15-16.
[44] *Id.* at 16.
[45] *See* R. Doc. 110-1 at 29-31 (FSC 30(b)(6) Tr. 113-18); *see also* R. Doc. 81-2 at 1.